IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA SHELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 23-00021-KD-N |
| ) | |
| THE CITY OF CHICKASAW BOARD ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This action is before the Court on the parties' joint Motion to Approve Settlement (Doc. 16); Defendant's Rule 68 Offer of Judgment (Doc. 16-1); Plaintiff's Itemization of Work of Paralegal (Docs. 17, 17-1); and Defendant's Position Concerning Claimed Paralegal Time (Doc. 18).

**I.    Background**

Plaintiff Patricia Shelly ("Shelly") is currently the Executive Administrative Assistant for the Superintendent of Defendant City of Chickasaw Board of Education (the "Board"). Shelly was employed by the Board for the three years prior to filing the present action. (Doc. 16 at 2).

Prior to August 2020, Shelly was paid a monthly salary, stipends, and overtime premium pay for hours worked in excess of 40 hours during a seven-day workweek. (Doc. 16 at 2). Shelly "was required to clock in at the start of [the] workday and clock out at the end of the workday." (Doc. 16 at 2).

On or about September 2020, "in connection with a significant salary increase and based on a belief that [Shelly] was an 'exempt' employee, [Shelly] was no longer paid overtime premium pay for hours worked over 40 in the workweek." (Doc. 16 at 2). Instead, Shelly was paid her

1

monthly salary – regardless of how many hours or days she worked in a week. (Doc. 16 at 2). Consequently, the Board no longer required Shelly to clock out at the end of the work day.

On or about February 14, 2023, the Board began to require Shelly to "clock in for work, clock out for a lunch break, clock in after the lunch break, and clock out when work ended for the day." (Doc. 16 at 3).

Shelly claims she was not adequately compensated for overtime premium pay for hours worked in excess of 40 in the workweek from September 2020 to the filing of the present action, January 13, 2023. Shelly argues that two practices by the Board caused the inadequate compensation. First, Shelly asserts that she was "required to work hours outside of her regular working hours, including staying afterhours for meetings of the [] Board." (Doc. 16 at 3; Doc. 1 at 2). Second, Shelly alleges that she "regularly work[ed] through what should [have been] a lunch break, thus causing work in excess of forty (40) hours many weeks." (Doc. 16 at 3; Doc. 1 at 2).

As relief, Shelly requests that this Court issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Board are violative of the rights of Shelly as secured by the FLSA; award damages from the Board, including compensation for unrecorded overtime work plus interest, post-judgment interest, and liquidated and exemplary damages, in an amount to be proven at trial; award all costs of litigation, including expert fees and attorneys' fees and costs; and award such other legal and equitable relief as the Court deems proper. (Doc. 1 at 4).

II.     **Governing Law**

In <u>Lynn's Food Stores, Inc. v. United States ex rel. Dep't of Labor, Emp. Standards Admin., Wage & Hour Div.</u>, 679 F.2d 1350, 1352-1355 (11th Cir. 1982), the Eleventh Circuit recognized two (2) methods for settlement of claims brought pursuant to the FLSA: supervision by the

Secretary of Labor; or court approval in a private action where a plaintiff is represented by counsel. As to the latter, which applies here, the parties may compromise and settle the FLSA claims but only with Court approval of the settlement agreement.

Specifically, courts must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the FLSA claims. Lynn's Food Stores, 679 F.2d at 1352-1355; Dees v. Hydradry, Inc., 706 F.Supp.2d 1227, 1238-1239 (M.D. Fla. 2010). Evaluating the fairness of an FLSA compromise includes an assessment of: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense and likely duration of the litigation; 3) the stage of the proceedings and amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. Dees, 706 F.Supp.2d at 1241. Additionally, the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" Silva v. Miller, 307 Fed. Appx. 349, 351 (11th Cir. 2009). "When a settlement agreement includes….attorney's fees and costs, the 'FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" Id. Moreover, 29 U.S.C. § 216(b) provides that "...[a]ny employer who violates…shall be liable to the employee….affected in the amount of….their unpaid overtime compensation….and in an additional equal amount as liquidated damages...The court…shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Thus, "in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*." Vergara v. Delicias Bakery & Restaurant, Inc., 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).

Relative to the foregoing, there is no actual settlement agreement before the Court. Specifically, the parties' did not submit a document that constitutes a settlement agreement. Instead, the Parties submit a Rule 68 Offer of Judgment and Plaintiff's acceptance, combined in Docs. 16 and 16-1, for the Court's review of the overall settlement.

**III.     Bona Fide Dispute and Fair and Reasonable Resolution**

Courts may approve a compromise resolving a bona fide dispute over FLSA provisions where a plaintiff's compromise of his claims (the settlement agreement) is a fair and reasonable resolution of that dispute. Lynn's Food, 679 F.2d at 1352-1355; Dees, 706 F.Supp.2d at 1238-1239. "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." Dees, 706 F.Supp.2d at 1241.

**A.     Bona Fide Dispute**

Section 216(b) of the FLSA provides that "... [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages ..." 29 U.S.C. § 216(b). Section 207 is captioned "Maximum Hours" and paragraph (a)(1) states as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Plaintiff initiated this lawsuit against Defendant seeking to recover liquidated and exemplary damages, interest, litigation costs, and reasonable attorneys' fees pursuant to the

FLSA. (Doc. 1 at 1, 4). Specifically, Plaintiff alleges that during the time she worked for Defendant, she was not properly compensated with an overtime premium for hours worked over 40 each week, in violation of her FLSA rights. Plaintiff claims that she regularly worked hours that went uncompensated while working for Defendant; particularly, Plaintiff alleges that she was required to 1) "work hours outside of her regular working hours, including staying afterhours for meetings of the [] Board" and  2) "regularly work[] through [lunch]." (Doc. 16 at 3; Doc. 1 at 2). Plaintiff alleges, therefore, that the compensation she has received since September 2020 is inadequate overtime pay.

Defendant does not dispute that Plaintiff was required to work outside of her regular working hours, but "disputes the extent to which this practice caused Plaintiff to work in excess of 40 hours in workweeks during the relevant period." (Doc. 16 at 3). Defendant also disputes that Plaintiff regularly works through lunch, "disputes Plaintiff's assumption of the number of days she worked in the office during the relevant period, and also disputes the extent to which this alleged conduct caused Plaintiff to work in excess of 40 hours in workweeks during the relevant period." (Doc. 16 at 3).

Based on a review of the docket, the present Motion (Doc. 16) and proposed Offer of Judgment (Doc. 16-1), the Court finds that a bona fide dispute exists as to whether Plaintiff was paid overtime for all hours worked over 40 as required by 29 U.S.C. §207 (a).

B.     **Fair and Reasonable Resolution**

Lynn's Food requires this Court to determine whether Plaintiffs' compromise of their claims is fair and reasonable. Lynn's Food, 679 F.2d at 1352-1355; Dees, 706 F.Supp.2d at 1238-1239. A general framework for evaluating the fairness of an FLSA compromise includes: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense, and likely duration of the

litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. Dees, 706 F.Supp.2d at 1241. The parties agree that the terms of settlement are fair and reasonable. (Doc. 18 at 2). Per Lynn Food's however, the Court must still assess same.

1. **Compromise of the FLSA Claims**

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages[.]" 29 U.S.C. § 216(b).

The parties agree that both sides compromised their positions. (Doc. 16 at 8). According to the parties, Shelly's settlement amount provides for 56% of the estimated amount she "gave in response to the Court's interrogatories." (Doc. 16 at 5). Defendant explained how the agreed upon overtime amount was calculated:

> (1) the number of office workdays Plaintiff claimed to have "worked through lunch" was significantly lower than Plaintiff's assumptions, and (2) the number of weeks in which her "afterhours work" actually caused her to work over 40 hours was significantly lower than Plaintiff assumed. Defendant also noted that certain amounts of overtime work occurred more than two years before she filed this lawsuit, and thus she would have to prove the failures to pay overtime in 2020 were "willful" in order to recover overtime pay for those hours…
>
> … Defendant assumed Plaintiff had worked an extra 0.5 hours "working through lunch" on all days when she was in the office during 2020-2022, assumed Plaintiff could recover for overtime hours worked more than two years before the lawsuit filing date, and assumed the pay calculations should multiply hours over 40 by 1.5 times the regular rate of pay rather than 0.5 times the regular rate.

Doc. 16 at 5.

In other words, the Board corrected the amount of claimed overtime forming the basis of Shelly's initial valuation of her claims. This calculation gives Shelly proper overtime

compensation required by law and doubles it to include liquidated damages. (Doc. 16 at 4-5). Further, the parties assert that the settlement is a "compromise of a sharply disputed claim." (Doc. 16 at 8).

### 2. Scope and Terms of the Proposed Settlement Agreement

The assessment of fairness is guided by prevailing FLSA case law and a review of the specific terms of the parties' proposed settlement. Here, the settlement terms contain a disfavored provision that encumbers approval of the FLSA settlement.

In short, Paragraph 26 of Document 16 is pervasive (*not just limited to FLSA claims*).[1] Specifically, Paragraph 26 reads:

> The parties agree that the settlement is intended to be a total resolution and complete satisfaction of any and all claims and allegations by Plaintiff against Defendant known or unknown that are or could have been asserted in this action.

Doc. 16 at 8.

The foregoing proposed settlement term exceeds the bounds of FLSA claims and provides for a general release from liability unconnected to the FLSA -- *i.e.*, "any and all claims…by Plaintiff against Defendant…known or unknown." (Doc. 16 at 8). As such, this provision covers a "dizzying array of claims, known and unknown[ ]" which "courts have found to be an anathema to the FLSA." Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1350-1352 (M.D. Fla. 2010) (an employer may not "use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA[ ]"); Robinson v. Waste Pro of Fla., Inc., 2022 WL 17476666, *3 (M.D. Fla. Nov. 9, 2022), *Report & Recommendation*. "Such general or pervasive releases are frequently viewed as 'side deal[s]' in which the employer extracts a gratuitous (although usually valueless) release of all claims in

---

[1] Paragraph 5 in Document 16-1 contains similar language.

exchange for money unconditionally owed to the employee[ ]' ... [b]ecuase general releases 'confer[] an uncompensated, unevaluated, and unfair benefit on the employer,' they often do not survive judicial scrutiny." Robinson, 2022 WL 17476666 at *3.

Many courts in the Eleventh Circuit conclude that such broad releases are unfair and unreasonable. For example, as summarized in Moreno, 729 F.Supp.2d at 1351:

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. In the language of Hydradry, a pervasive release is a "side deal" [ ] in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee. (If an employee signs a pervasive release as part of a "side deal" and later discovers a valuable but released claim, the employee perhaps looks for compensation from the attorney who advise the employee to grant the release.) Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA.

"'Put simply, in order to be compensated consistent with the FLSA, an employee cannot be compelled to surrender other rights, for doing so undermines the fundamental mandatory nature of the minimum wage and overtime protections of the Act by enabling an employer to extract a price for simply doing what the Act requires[ ]' Briggins v. Elwood TRI, Inc., 3 F.Supp.3d 1277, 1289 (N.D. Ala. 2014)." Lee v. Guyoungtech USA, Inc., 247 F.Supp.3d 1257, 1263-1264 (S.D. Ala. Mar. 23, 2017).

An acceptable release would narrow the scope of release, for instance, to "any and all charges, claims, damages, causes of action or lawsuits of the claims specifically pled in this civil action under the FLSA, 29 U.S.C. § 201 et seq., and all claims for damages or attorneys' fees based on any such claims, arising out of, or pertaining in any way to" Plaintiffs' actions against Defendant, up to the date of Plaintiffs signing this agreement. Harris v. Waste Serv. of Ala, LLC,

2017 WL 6498146, *3 (N.D. Ala. Dec. 19, 2017). Therefore, Paragraph 26 would be permissible if it read, "The parties agree that the settlement is intended to be a total resolution and complete satisfaction of any and all claims and allegations by Plaintiff against Defendant known or unknown that or could have been asserted under the FLSA, 29 U.S.C. § 201 et seq., in this civil action."

For this reason, the Court cannot approve the parties' proposed settlement at this time.

## V.     Conclusion

Accordingly, it is **ORDERED** that on or before **August 11, 2023**, the parties shall jointly file a new motion and settlement which cures the foregoing deficiencies.

Last, the parties are advised that the only settlement terms before the Court are the terms specifically identified in Docs. 16 and 16-1. To the extent any other terms exist, they are not included in this Settlement and have not been submitted for approval by the Court.

**DONE** and **ORDERED** this the **3rd** day of **August 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**