IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA SHELLY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 1:23-00021-KD-N |
| | ) | |
| THE CITY OF CHICKASAW BOARD | ) | |
| OF EDUCATION, | ) | |
|     Defendant. | ) | |

ORDER

This matter is before the Court on the parties' "Revised Joint Motion to Approve Settlement" (Doc. 20), responding to the Court's 8/3/23 Order (Doc. 19) (amending Doc. 16).

I.   **Background**

Plaintiff Patricia Shelly (Shelly) is currently the Executive Administrative Assistant for the Superintendent of Defendant City of Chickasaw Board of Education (the Board). Shelly was employed by the Board for the three years prior to filing the present action. (Doc. 20 at 2). Prior to August 2020, Shelly was paid a monthly salary, stipends, and overtime premium pay for hours worked in excess of 40 hours during a seven-day workweek. (Id.) Shelly "was required to clock in at the start of [the] workday and clock out at the end of the workday." (Id. at 3).

On or about September 2020, "in connection with a significant salary increase and based on a belief that [Shelly] was an 'exempt' employee, [Shelly] was no longer paid overtime premium pay for hours worked over 40 in the workweek." (Doc. 20 at 2). Instead, Shelly was paid her monthly salary – regardless of how many hours or days she worked in a week. (Id.) Consequently, the Board no longer required Shelly to clock out at the end of the workday. (Id. at 3).

On or about February 14, 2023, the Board began to require Shelly to "clock in for work, clock out for a lunch break, clock in after the lunch break, and clock out when work ended for the

day." (Doc. 20 at 3). Shelly claims she was not adequately compensated for overtime premium pay for hours worked in excess of 40 in the workweek from September 2020 to the filing of the present action, January 13, 2023. Shelly argues that two (2) practices by the Board caused the inadequate compensation. First, Shelly asserts that she was "required to work hours outside of her regular working hours, including staying afterhours for meetings of the [] Board." (Doc. 20 at 3; Doc. 1 at 2). Second, Shelly alleges that she "regularly work[ed] through what should [have been] a lunch break, thus causing work in excess of forty (40) hours many weeks." (Id.) As relief, Shelly requests that this Court issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Board are violative of the rights of Shelly as secured by the FLSA; award damages from the Board, including compensation for unrecorded overtime work plus interest, post-judgment interest, and liquidated and exemplary damages, in an amount to be proven at trial; award all costs of litigation, including expert fees and attorneys' fees and costs; and award such other legal and equitable relief as the Court deems proper. (Doc. 1 at 4).

## II.    <u>Governing Law</u>

In <u>Lynn's Food Stores, Inc. v. United States ex rel. Dep't of Labor, Emp. Standards Admin., Wage & Hour Div.</u>, 679 F.2d 1350, 1352-1355 (11th Cir. 1982), the Eleventh Circuit recognized two (2) methods for settlement of claims brought pursuant to the FLSA: 1) supervision by the Secretary of Labor, or 2) court approval in a private action where a plaintiff is represented by counsel. As to the latter, which applies here, the parties may compromise and settle the FLSA claims but only with Court approval of the settlement agreement.

Specifically, courts must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the FLSA claims. <u>Lynn's Food</u>, 679 F.2d at 1352-1355; <u>Dees v. Hydradry, Inc.</u>, 706 F.Supp.2d 1227, 1238-1239 (M.D. Fla. 2010). Evaluating the fairness of an

FLSA compromise includes an assessment of: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense and likely duration of the litigation; 3) the stage of the proceedings and amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. <u>Dees</u>, 706 F.Supp.2d at 1241. Additionally, the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" <u>Silva v. Miller</u>, 307 Fed. Appx. 349, 351 (11th Cir. 2009). "When a settlement agreement includes….attorney's fees and costs, the 'FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" <u>Id</u>. Moreover, 29 U.S.C. § 216(b) provides that "...[a]ny employer who violates…shall be liable to the employee….affected in the amount of….their unpaid overtime compensation….and in an additional equal amount as liquidated damages...The court…shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Thus, "in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*." <u>Vergara v. Delicias Bakery & Restaurant, Inc.</u>, 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).

Previously, the parties did not file a copy of their settlement agreement, instead submitting a Rule 68 Offer of Judgment and Shelly's acceptance  (Docs. 16, 16-1), for the Court's review. With the pending motion, however, the parties filed a copy of the settlement. (Doc. 20-1).

## III.   <u>Bona Fide Dispute and Fair and Reasonable Resolution</u>

Courts may approve a compromise resolving a bona fide dispute over FLSA provisions where a plaintiff's compromise of his claims (the settlement agreement) is a fair and reasonable

resolution of that dispute. <u>Lynn's Food</u>, 679 F.2d at 1352-1355; <u>Dees</u>, 706 F.Supp.2d at 1238-1239. "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." <u>Dees</u>, 706 F.Supp.2d at 1241.

**A.      Bona Fide Dispute**

For those reasons set forth in the Court's prior Order (Doc. 19), the undersigned has already determined that a bona fide dispute exists as to whether Shelly was paid overtime for all hours worked over 40 as required by 29 U.S.C. § 207(a).

**B.      Fair and Reasonable Resolution**

<u>Lynn's Food</u> requires this Court to determine whether a plaintiff's compromise of his or her claims is fair and reasonable. <u>Lynn's Food</u>, 679 F.2d at 1352-1355; Dees, 706 F.Supp.2d at 1238-1239. A general framework for evaluating the fairness of an FLSA compromise includes: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. <u>Dees</u>, 706 F.Supp.2d at 1241. The parties agree the terms of settlement are fair and reasonable. (Doc. 20 at 6, 10). Per <u>Lynn Food's</u>, the Court must still assess same.

**1.      Compromise of the FLSA Claims**

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages[.]" 29 U.S.C. § 216(b). The parties agree that both sides compromised their positions. (Doc. 20 at 9). According to the parties, Shelly's settlement amount

4

provides for 56% of the estimated amount she "gave in response to the Court's interrogatories."

(Id. at 5). Defendant explained how the agreed upon overtime amount was calculated:

> Defendant also provided Plaintiff and her counsel an explanation for how Defendant calculated the overtime pay amount. … Defendant explained that, as shown in the time records, (1) the number of office workdays Plaintiff claimed to have "worked through lunch" was significantly lower than Plaintiff's assumptions, and (2) the number of weeks in which her "afterhours work" actually caused her to work over 40 hours was significantly lower than Plaintiff assumed. Defendant also noted that certain amounts of overtime work occurred more than two years before she filed this lawsuit, and thus she would have to prove the failures to pay overtime in 2020 were "willful" in order to recover overtime pay for those hours.
>
> … In the spirit of compromise, and without admitting fault, in its calculations, Defendant assumed Plaintiff had worked an extra 0.5 hours "working through lunch" on all days when she was in the office during 2020-2022,[] assumed Plaintiff could recover for overtime hours worked more than two years before the lawsuit filing date,[ ] and assumed the pay calculations should multiply hours over 40 by 1.5 times the regular rate of pay rather than 0.5 times the regular rate.[]

Id. (footnotes omitted). In other words, the Board corrected the amount of claimed overtime forming the basis of Shelly's initial valuation of her claims. The Court previously concluded that this calculation gave Shelly proper overtime compensation required by law and doubled it to include liquidated damages. (Doc. 19). Further, the parties assert that the settlement is a "compromise of a sharply disputed claim." (Doc. 20 at 9).

## 2.   Scope and Terms of the Proposed Settlement Agreement

As set forth in the Court's prior order (Doc. 19), the scope of the settlement exceeded the bounds of FLSA claims and so encumbered approval of the settlement. This assessment of fairness was guided by prevailing FLSA case law and a review of the specific terms of the parties' proposed settlement. As stated in Doc. 19, the proposed settlement terms contained a disfavored provision - - Paragraph 26 – which was pervasive (not just limited to FLSA claims) as such states: "The parties agree that the settlement is intended to be a total resolution and complete satisfaction of any and all claims and allegations by Plaintiff against Defendant known or unknown that are or could have

been asserted in this action." (Doc. 16 at 8).[1] The Court concluded that this settlement term exceeded the bounds of FLSA claims and provided for a general release from liability unconnected to the FLSA -- *i.e.*, "any and all claims…by Plaintiff against Defendant…known or unknown." (Doc. 19). As such, this provision covered a "dizzying array of claims, known and unknown[ ]" which "courts have found to be an anathema to the FLSA." (Id.) The Court indicated what would constitute an acceptable release: "Paragraph 26 would be permissible if it read, 'The parties agree that the settlement is intended to be a total resolution and complete satisfaction of any and all claims and allegations by Plaintiff against Defendant known or unknown that or could have been asserted under the FLSA, 29 U.S.C. § 201 et seq., in this civil action.'" (Id.)

At present, the parties represent that they have now agreed to a narrower release, as set forth in Paragraph 6 of the revised settlement. (Doc. 20 at 7). Paragraph 6 provides as follows:

> In consideration of the foregoing, Shelly forever releases, discharges and agrees to hold harmless the Board and its individual members, employees, agents, officers, representatives, attorneys, insurance carriers, reinsurers, underwriters, successors, or assigns, (collectively "Released Parties") from and against all charges, claims, damages, or causes of action, specifically pled in the Lawsuit under 29 U.S.C. § 201 et seq., and all claims for damages or attorneys' fees based on any such claims, arising out of the Board's actions through March 24, 2023. Shelly agrees never to file a lawsuit or join in a lawsuit against the Board or the Released Parties as defined herein that asserts or alleges or is based on any claim released by this Agreement. Shelly expressly waives any right to monetary relief, reinstatement, or any other legal or equitable relief from the Board or the Released Parties awarded by any governmental agency or court relating to any lawsuit, complaint, charge, or other proceeding (regardless of by whom filed or when filed) that asserts or alleges or is based in any claim released by this Agreement.

(Doc. 20-1 at 1-2 at ¶6). Upon consideration, the pervasive release has been removed, and the amended release of Paragraph 6 is acceptable.

---

[1] Paragraph 5 in Document 16-1 contains similar language.

IV.   <u>**Attorneys' Fees & Costs**</u>

Per the settlement, the parties seek an award of $402 in costs and $8,750 in attorneys' fees, as incurred by Shelly's counsel for billing 34.8 hours from November 22, 2022 – April 10, 2023. (Doc. 17-1).[2] The parties assert that they separately negotiated attorneys' fees and costs without regard to the amount paid to Shelly, and did so after she accepted the proposed $18,400.00 figure for overtime and liquidated damages. (Doc. 20 at 7). The parties state that they did not compromise Shelly's claim in arriving at the proposed attorneys' fees and costs amounts. (<u>Id</u>.) The Board does not dispute the reasonableness of the costs or attorneys' fees. In support, Shelly submitted the Declaration of Plaintiff's Counsel Thomas M. Loper, which references Docs. 17 and 17-1 as itemization of the fees and expenses reasonably incurred in this case. (Doc. 20-2 (Decltn. Loper)).

The Court must separately review the reasonableness of counsel's legal fees (*i.e.*, consider whether payment to counsel is reasonable to ensure the fees did not improperly influence the amount that plaintiff agreed to accept). <u>Silva,</u> 307 Fed. Appx. at 351. <u>See</u> <u>also</u> <u>e.g.</u>, <u>Lyons v. Beef O' Brady's,</u> 2015 WL 5602452, *3 (S.D. Ala. Sept. 23, 2015); <u>Czopek v. Tbc Retail Group, Inc.,</u> 2016 WL 7116112, *5 (M.D. Fla. Nov. 7, 2016), *R&R adopted by* 2016 WL 7104187 (M.D. Fla. Dec. 6, 2016); <u>Wing v. Plann B Corp.,</u> 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012), *R&R adopted by* 2012 WL 4746190 (M.D. Fla. Oct. 4, 2012); <u>Bonetti v. Embarq Mgt. Co.,</u> 2009 WL 2371407 (M.D. Fla. Aug. 4, 2009). Notably, the "FLSA requires judicial review … to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." <u>Silva,</u> 307 Fed. Appx. at 352; <u>Czopek,</u> 2016 WL 7116112 at *5 (same).  This means that Courts consider whether the fees were negotiated separately and apart from a plaintiff's settlement of the FLSA claims. <u>Wing,</u> 2012 WL 4746258 at

---

[2] The prior request for paralegal fees was withdrawn.

*4 (where there is a reasonable basis for compromise and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees … there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel").

To determine reasonableness of fees in FLSA cases, courts rely on the lodestar method. Padurjan v. Aventura Limousine & Transp. Serv., Inc., 441 Fed. Appx. 684 (11th Cir. 2011); Perez v. Carey Int'l, Inc., 373 Fed. Appx. 907 (11th Cir. 2010); Norman v. Alorica, Inc., 2012 WL 5452196 (S.D. Ala. Nov. 7, 2012); Wolff v. Royal Am. Mgt., Inc., 2012 WL 5303665 (S.D. Ala. Oct. 25, 2012). Under the lodestar, courts multiply the number of hours reasonably expended by a reasonable hourly rate for similar legal services. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1147, 1150 (11th Cir. 1993). Adjustments may be made "as necessary[.]" Blum v. Stenson, 465 U.S. 886, 888 (1984).[3]  As summarized in Nail v. Shipp, 2020 WL 1670459 , *2-3(S.D. Ala. Apr. 3, 2020):

> Regardless of who is doing the billing, courts may only award fees for time spent by attorneys, or for the work of non-lawyer paralegals *but only to the extent they perform work "traditionally done by an attorney[ ]"* -- i.e., no fees for overhead (secretarial/administrative tasks). See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 at note 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them[ ]"); Vanderbilt Mortg. and Fin., Inc. v. Crosby, 2015 WL 5178719, *2 (S.D. Ala. Sept. 54, 2015) ("excessive, redundant, or otherwise unnecessary" fees are not recoverable); SE Prop. Holdings, LLC v. 145, LLC, 2012 WL 6681784, *4-5 (S.D. Ala. Dec. 21, 2012) (allowing recovery of traditional attorney-work but not clerical work). See also Brown v. Lambert's Cafe III, 2016 WL 325131, *6, n. 4 (S.D. Ala. Jan. 27,

---

[3] Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292 (11th Cir. 1988). Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended. Hensley, 461 U.S. at 434. Even when a party prevails, the court still must determine whether time was reasonably expended and if not, that time should be excluded. Id. While the "lodestar" method effectively replaced the balancing test in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), the 12 Johnson factors "might still be considered in terms of their influence on the lodestar amount. The factors are: 1) time/labor required; 2) novelty/difficulty of the questions; 3) skill requisite to perform the services properly; 4) preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed/contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and results obtained; 9) experience, reputation, and ability of the attorney; 10) "undesirability" of the case; 11) nature/length of the professional relationship with the client; 12) awards in similar cases. Johnson, 488 F.2d at 717-719.

2016) (clerical tasks are not recoverable). "Courts in this district generally consider tasks such as mailing and telefaxing correspondence, making routine calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions." Cormier v. ACAC Inc., 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013). See also Whitney Bank v. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition); Johnson v. TMI Mgmt.Sys., Inc., 2012 WL 4435304, *5 (S.D. Ala. Sept. 26, 2012) (finding "telephone call to client re: scheduling appointment," "receipt and download of order," and "review of the Court's Order ..." non-compensable). As detailed in Ford v. Navika Capital Grp., LLC, 2017 WL 1381668, *3-4 (S.D. Ala. Apr. 17, 2017) (internal citations omitted):

> Such non-recoverable tasks include time billed for: setup of a file, calendaring deadlines, receiving, reviewing, and indexing documents, sending or receiving emails with documents attached, preparing civil cover sheets and summons, receiving and indexing certified mail receipts, e-filing documents with the Court, receiving and indexing those documents, mailing and telefaxing correspondence, making calls to clients, obtaining pleadings from the court's database, printing documents, miscellaneous scanning of documents, etc ... [FN4] ...

> [FN4].... (clerical tasks such as "Review Summons Issued," "Call to Clerk to confirm Summons were sent to Marshall for service," "Download/Combine and OCR Transcript, live bookmark," and "Download, file and save Corrected transcript in parts," are not compensable as attorney fees); .... (downloading, scanning or saving files or docket entries are not recoverable); ..... (an attorney in an FLSA case should not be permitted to recover fees for clerical time for e-filing, on line research of addresses, preparing civil cover sheets and summonses and for reviewing the CM/ECF email for documents prepared and filed by counsel).

> ... The billing records include numerous entries for such tasks (.... "receive settlement agreement and W9 form signed from client: scan to file and save," .... "re-scan settlement agreements into S drive for clients", ... "further preparation of documents for client correspondence", ... "conference with counsel regarding strategy on service affidavits," ... "compilation of correspondence and pleadings regarding all parties in lawsuit," ... "analysis of scheduling order/docket .." .... "save supplemental report regarding settlement to S drive," "Operation of Spreadsheet ...", etc. .... The non-recoverability for clerical tasks may also be applicable to those entries labeled "Assistance with...." ....

A.   <u>**Reasonable Rate**</u>

Shelly seeks to recover an attorney fee rate of $250/hour, as reasonable in this case. As the party requesting fees, Shelly bear the burden of supplying specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citing <u>Norman</u>, 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." <u>Norman</u>, 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. <u>Barnes</u>, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed[ ]'"). Additionally, the Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates. <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994). Moreover, this Court's prior awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney seeking an award of fees. <u>Langford v. Hale Cty. Ala. Comm'n</u>, 2016 WL 4976859, *3 (S.D. Ala. Sept. 16, 2016).

In FLSA cases, the undersigned has found $250-$350/hour to be reasonable for "top Mobile lawyers in complex cases" and $225-250/hour for counsel with 14-15 years of experience. <u>Criswell v. Mobile Housing Bd</u>., Civil Action 14-00047-KD-N (S.D. Ala. Aug. 3, 2016) (Doc. 99). <u>See</u> <u>also</u> <u>e.g.</u>, <u>Smith v. Community Loans of Am., Inc.</u>, 2013 WL 372113, *7 (S.D. Ala. Jan. 30, 2013) (awarding $250/hour for an attorney with 15 years of experience); <u>McCants v. Fred's of Tenn., Inc.</u>, 2013 WL 172900, *4 (S.D. Ala. Jan. 16, 2013) (awarding $250/hour for an attorney

with 11 years of experience in employment litigation); <u>Higdon v. Critter Control of the Gulf Coast,</u>
<u>LLC</u>, 2013 WL 673462, *5 (S.D. Ala. Feb. 25, 2013) (awarding $250/hour to counsel who had
been practicing since 1989); <u>Goldsby v. Renosol</u> <u>Seating, LLC</u>, 2013 WL 6535253, *9 (S.D. Ala.
Dec. 13, 2013) (finding $250-$300/hour reasonable "for more experienced and qualified
attorneys[]"); <u>Decorative Components, Inc. v. ICON Computing Solutions, Inc</u>., 2012 WL
5398800, *5-6 (S.D. Ala. Nov. 2, 2012) (recognizing that $250-$350/hour was reasonable for "top
Mobile lawyers in complex cases" and $250/hour "for an attorney with 15 years of experience as
a law firm partner[ ]"). <u>Fitzwater v. Cole</u>, 2020 WL 620670, *2 at note 2 (S.D. Ala. Feb. 10, 2020).

The Court has reviewed attorney Loper's Declaration and itemized statement. (Doc. 20-2
(Decltn. Loper) and Doc. 17-1). A review of Loper's Declaration indicates that he has practiced
since 2005 (for 18 years), and that his primary practice is in labor and employment law.  (Doc. 20-
2 at 2 (Decltn. Loper)). Loper also attests to representing almost 24 labor unions and employee
associations with jurisdiction in 11 states, and over 20 union-affiliated health and welfare pension
plans. (<u>Id</u>.) Upon consideration, and in the undersigned's discretion, the Court finds that the
requested $250/hour rate for Loper's fees in this case is reasonable.

**B.    <u>Reasonable Hours</u>**

Shelly seeks an award of 34.8 hours for attorney Loper's work in this case, as reasonably
incurred. In determining whether the number of hours expended are reasonable, the Court should
not include any hours which are "excessive, redundant, or otherwise unnecessary." Norman, 836
F.2d at 1301. "Courts are not authorized to be generous with the money of others, and it is as much
the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an
adequate amount is awarded." Barnes, 168 F.3d at 428. The Court will not permit a party to recover
fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary

irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted). And while there is no *per se* rule of proportionality, City of Riverside v. Rivera, 477 U.S. 561, 573-574 (1986), "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded.... It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees." Id. at 573. As expressed by this Court in Wolff, 2012 WL 5303665 at *5:

> [I]n light of the gross disparity between what plaintiff claimed and what her attorneys now seek for obtaining the recovery, there is significant potential for the fee award to become a windfall for plaintiff's counsel. FLSA suits are not meant to become a cottage industry divorced from the benefits they provide, and the fees should not shade over from fair play into a punitive measure against defendants who challenge a plaintiff's overtime claim in good faith. The court considers these factors in determining the reduction to be applied to the fees requested in this action.

Additionally, a court "has discretion to reduce an award to account for situations where the lodestar figure is unreasonable in light of the limited success obtained." Martinez v. Hernando County Sheriff's Off., 579 Fed. Appx. 710, 715 (11th Cir. 2014). See also, e.g., Goss v. Killian Oaks House of Learning, 248 F.Supp.2d 1162, 1168 (S.D. Fla. 2003) (denying fees as counsel "seem[ed] to have leveraged a small sum as a stepping-stone to a disproportionately large award" by seeking $16,000 for a $315.89 FLSA claim). Cf. P&K Rest. Enter., LLC v. Jackson, 758 Fed. Appx. 844, 850-851 (11th Cir. 2019) (a jury awarded a plaintiff $6,308 and the district court awarded $188,894.20 in fees, which was affirmed).

Moreover, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. Hensley, 461 U.S. at 433-434. See also e.g., Norman, 836 F.2d at 1299, 1303 ("[t]he court ... is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment[ ]") (citations

omitted); Barnes, 168 F.3d at 428 ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary[ ]"); Jean v. Nelson, 863 F.2d 759, 772-777 (11th Cir. 1988) (discussing the reasonableness of the hours expended in light of the contention that the fee requests were not supported by sufficient documentation and involved duplication of efforts).

The Court has reviewed attorney Loper's Declaration and itemized statement for the 34.8 hours that Loper billed in this case. (Doc. 20-2 (Decltn. Loper) and Doc. 17-1). Upon consideration, the Court finds that the time billed is sufficiently detailed, not duplicative, and overall reasonable, such that 34.8 hours are awardable.

**C.      Lodestar**

For decades the law in this circuit has been that '[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" Norman, 836 F.2d at 1303. Accordingly, "where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the [appellate] court may make the award on its own experience." Id. The lodestar figure established may be adjusted by consideration of these factors:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala. 1988). The undersigned finds no reason to make any adjustments from the lodestar. Thus, based on the foregoing, the lodestar is calculated as follows: 34.8 hours x $250/hour = $8,750.

### D.    Costs

As to the **$402** in costs, Shelly asserts such were necessarily incurred in this case for the SDAL filing fee. (Doc. 20; Doc. 20-2 (Decltn. Loper)). The parties seek this cost as a settlement term as well. (Doc. 20-1 at 2 at ¶3). The SDALA filing fee is recoverable. As set forth in Section 1920(1), "[f]ees of the clerk" may be taxed as costs. Thus, Shelly is awarded $402 in costs.

### V.    CONCLUSION

Accordingly, it is **ORDERED** that the parties' Revised Joint Motion to Approve Settlement" (Doc. 20) is **GRANTED** (for those reasons set forth here and in Doc. 19). Additionally, it is **ORDERED** that the parties' request for attorneys' fees and costs is **GRANTED**: Shelly's counsel is awarded **$9,152** ($8,750 in attorney's fees and $402 in costs).

**DONE** and **ORDERED** this the **3rd** day of **November 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**